THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RANDY GARRETT, Defendant-Appellant.

Fifth District   No. 76-235

Opinion filed March 2, 1978.

G. MORAN, J., dissenting.

Michael J. Rosborough and Michael Yovovich, both of State Appellate
Defender's Office, of Mt. Vernon, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Keith P.
Vanden Dooren, both of Illinois State's Attorneys Association, of counsel), for the
People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant was charged by indictment in Williamson County with unlawful delivery of a controlled substance (less than 30 grams of heroin) in violation of section 401(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1401(b)). Defendant pled guilty to the offense and was sentenced to five to 20 years imprisonment to run consecutively to sentences previously imposed in Jackson County. Defendant contends on appeal that his sentence was excessive and should be reduced, that his counsel had a *per se* conflict of interest and error occurred when court and counsel ignored Supreme Court Rule 604(d) (Ill. Rev. Stat. 1973, ch. 110A, par. 604(d).)

The factual basis established at the time the plea was accepted was that two agents of the Metropolitan Enforcement Group (M.E.G.) purchased from defendant three small bags of a substance later identified as heroin. After the plea had been accepted and a sentencing hearing scheduled defendant's counsel suggested that a presentence report prepared for a sentencing hearing some two weeks earlier in Jackson County be used rather than having a new one prepared. The court accepted this suggestion.

The presentence report contained the following information. Defendant pled guilty in Jackson County to three counts of unlawful delivery of less than 30 grams of a controlled substance. These three offenses involved the sale of small quantities of heroin to the same agents involved in the Williamson County offense. These sales occurred on February 19, March 19 and March 25, 1975, the last mentioned taking place two days prior to the Williamson County sale. The defendant was 24, a high school graduate, unmarried and unemployed. He had no juvenile record. He admitted heavy drug use in his past and indicated that he had attempted to overcome his dependency on drugs by enlisting in the Marine Corps. Defendant claimed that he had not indicated on his enlistment papers that he was addicted to drugs because the enlistment officer told him not to do so. However, his addiction was discovered shortly and he was placed in a drug rehabilitation center. He later received a general discharge under honorable conditions. The presentence report also contained a letter from the chief of police of defendant's home town indicating that following defendant's return from the armed services he had provided the police with information which had led to several arrests on drug related charges. The report also contained a possession of marijuana charge in the State of Kansas for which the defendant had received a year's probation and another possession charge in his home town of Bremen, Indiana for which he had received a suspended sentence. Defendant was sentenced in Jackson County to concurrent terms totalling fifteen months to four years imprisonment, five years probation and a $2500 fine.

At the sentencing hearing in this case the prosecutor recommended a consecutive sentence of six years eight months to twenty years. No evidence in aggravation was presented other than the Jackson County presentence report. The prosecutor pointed out the three convictions in Jackson County for heroin delivery, the marijuana conviction in Kansas and the defendant's difficulties with drugs in the Marine Corps. The prosecutor, in urging the maximum sentence, argued that the defendant was a pusher of heroin and had no other means of support. He also asserted that defendant had falsified military documents and that he sold drugs prior to enlisting, although there is no support in the record for this assertion.

Defense counsel also presented no evidence other than the Jackson County report. He pointed out that both the Jackson County and Williamson County offenses took place in a short space of time, five weeks, and called to the court's attention the sentence handed down in Jackson County.

In passing sentence the court made the following remarks:

"Of course, Heroin is a Schedule one drug and is highly toxic, and this is the fourth time for selling it during a 2 month period. Of course, it points out non-possessory offenses by a person who has no other visible means of support, and there is nothing in the record here to show that the Defendant is working at any other job, and I presume that what the legislature is aiming at there is that this man is making a living selling drugs, and this court thinks the minimum should be raised. I realize that this all occurred in about a 2 month period, and certain sentences were passed in Jackson County, and the court is going to consider the fact that sentences were passed over there in passing my sentence. My theory is that when an individual is convicted of so many crimes, heinous crimes against society as heroin, that the burden should be shifted from the public to the Defendant. He should be the one that has the burden of showing society that he should be returned and released back into society. Society should not have to continue to protect itself and allow persons that sell drugs on the streets. Therefore, I feel that this calls for a higher sentence, however, I will give you consideration and a break somewhat because of Jackson County with their sentences over there in considering the sentences here. It will be the judgment and sentence of this court that the Defendant be sentenced to the penitentiary for a term of not less than 5 years nor more than 20 years and that this sentence is to run consecutive to 75-CF-119, 75-CF-120 and 75-CF-121 in Jackson County."

In determining that a minimum sentence should be beyond that

provided by statute, which in this case would be one year, the court is required to consider "the nature and circumstances of the offense and the history and character of the defendant." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c).) These same factors are to be considered in deciding whether a sentence is to be consecutive. A consecutive sentence shall not be imposed unless "having regard to the nature and circumstances of the offense and the history and character of the defendant, [the court] is of the opinion that such a term is required to protect the public from further criminal conduct." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(b).) Other factors which may be considered in increasing the severity of the sentence are enumerated in that portion of the statute dealing with the fixing of sentences for drug offenses. Ill. Rev. Stat. 1973, ch. 56½, par. 1411.

The court, as indicated in his remarks, considered two of the factors set forth in chapter 56½ in passing sentence upon this defendant. Namely, that heroin is one of the most highly toxic controlled substances, a Schedule I drug, and that defendant was unemployed. The court obviously concluded that defendant was a dealer or pusher and that the substance in which he was trafficking is considered one of the most dangerous of the illicit drugs. Defendant's background is one of involvement with drugs and drug related offenses and he has shown no inclination to disengage himself from a drug oriented environment. He apparently has not held a job since he was discharged from the Marine Corps.

■■ The duty of a reviewing court is to determine whether the trial court properly exercised its discretion in imposing a sentence. The trial court is in a superior position to make the determination as to the sentence and the authority of the reviewing court to reduce the sentence should be applied with considerable caution and circumspection. (*People v. Allen*, 56 Ill. 2d 536, 309 N.E.2d 544.) Reviewing courts should consider the superior opportunity of the trial court during various proceedings at the trial level as well as the sentencing hearing to acquire information about the defendant which would be helpful in determining a suitable punishment. (*People v. Butler*, 64 Ill. 2d 485, 356 N.E.2d 330.) Further, a court of review should not disturb the sentence unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose. *People v. Taylor*, 33 Ill. 2d 417, 211 N.E.2d 673.

■■ We find no abuse of discretion present in this case. The factors relating to defendant's background, his present circumstances, his criminal record and his inability or unwillingness to disassociate himself from the illicit drug milieu, serve to justify the sentence imposed and its being made to run consecutive to the Jackson County sentences. In its remarks at the sentence hearing the court expressly found that

imprisonment was necessary to protect the public from the defendant. Upon consideration of the record as a whole we conclude that the sentence imposed by the trial court should not be disturbed.

Defendant next argues that his counsel who represented him in the filing of a motion to withdraw his plea of guilty under Supreme Court Rule 604(d) was the mayor of the city of Marion and since as the chief executive officer of that city he was a conservator of the peace with power to arrest (Ill. Rev. Stat. 1973, ch. 24, par. 3—9—4) and·"control[s]" the police force (Ill. Rev. Stat. 1973, ch. 24, par. 7—4—8) and is responsible for enforcing the laws (Ill. Rev. Stat. 1973, ch. 24, par. 6—4—7), that there is a *per se* conflict of interest constituting prejudice that requires reversal for a new hearing with new counsel on the Rule 604(d) petition.

■■ In this argument defendant relies on *People v. Cross*, 30 Ill. App. 3d 199, 331 N.E.2d 643, where it was held that there was prejudice *per se* and defendant was denied the effective assistance of counsel where defendant's retained attorney was an assistant Attorney General for inheritance tax matters at the time of defendant's trial. We believe, however, that the controlling case is *People v. Satterwhite*, 38 Ill. 2d 138, 230 N.E.2d 206, cited by the State. There the supreme court held that the fact that defense counsel was an assistant corporate counsel for the city of Chicago did not establish a conflict of interest invalidating defendant's conviction. The rationale was that the authority for prosecution of State law is vested in the Attorney General and State's attorneys and no conflict existed when an assistant corporate counsel defended on a charge his office was without authority to prosecute. And so it is here. The offense for which defendant was being prosecuted occurred in Cambria, not Marion. Any authority the defendant's attorney might have in Marion would not extend to Cambria. But even so, the violation with which defendant was charged was a State law and could not be prosecuted by the officials of any city. Accordingly, we find no conflict of interest in fact or implied as a matter of law.

Defendant finally asserts that the order denying his motion to withdraw his guilty plea should be set aside and the cause remanded for a new hearing because of the failure of the court and his counsel to comply with Supreme Court Rule 604(d).

■■ A motion to withdraw plea of guilty was timely filed on March 12, 1976, on behalf of defendant by his privately retained counsel. No affidavit was attached and the motion was unverified. On June 17, 1976, the following "Order Denying Motion to Vacate Judgment and Withdraw Plea of Guilty" was entered: "The court having considered the Motion of the Defendant, Randy Garrett, to vacate judgment and withdraw plea of guilty, and now being fully advised in the premises, finds that said Motion is without merit, and that said Motion should be and it is hereby denied."

There is no indication in the record that the certificate required of defendant's counsel by Rule 604(d) was ever supplied, nor does the motion filed by the attorney on behalf of defendant indicate that there was consultation between the attorney and defendant, nor is there any transcript of proceedings that would indicate that any hearing was held on the motion to withdraw the plea of guilty. To the contrary, the order entered on the motion to withdraw plea of guilty indicates only that it was "considered."

In *People v. Samuels*, 42 Ill. App. 3d 642, 356 N.E.2d 563, we held that Rule 604(d) requires the filing of a certificate by defendant's attorney stating compliance with the Rule in the manner stated. Inasmuch as there was no transcript of the hearing filed, or any other indication of what had transpired at the hearing or of what action had been taken by defendant's attorney, we remanded the cause for a new hearing on the motion to withdraw plea of guilty to be held in conformity with Rule 604(d). Of similar import to *Samuels* are *People v. Moore* (4th Dist.), 45 Ill. App. 3d 570, 359 N.E.2d 1065; and *People v. Sorensen* (5th Dist.), 49 Ill. App. 3d 984, 365 N.E.2d 171.

In other cases considering the alleged failure to comply with the requirements of Rule 604(d) it has been held that the rule of strict compliance set forth in *Samuels* only operates where the record fails to disclose counsel's substantial compliance, but where the record discloses that defendant's counsel has performed every function contemplated by the Rule, there has been substantial compliance even though the required certificate has not been filed. *People v. Evans* (4th Dist.), 46 Ill. App. 3d 689, 361 N.E.2d 77; *People v. Norris* (1st Dist.), 46 Ill. App. 3d 536, 361 N.E.2d 105; *People v. Chesnut* (3d Dist.), 47 Ill. App. 3d 324, 361 N.E.2d 1185; *People v. Ball* (4th Dist.), 50 Ill. App. 3d 36, 365 N.E.2d 243; *People v. Thompson* (4th Dist.), 50 Ill. App. 3d 51, 365 N.E.2d 255. Also see *People v. Thompson* (2d Dist.), 47 Ill. App. 3d 346, 361 N.E.2d 1169.

Other cases have held that there is sufficient compliance with Rule 604(d) where the certificate required of defendant's attorney is filed during the course of the appeal. *People v. Hummel* (4th Dist.), 48 Ill. App. 3d 1002, 365 N.E.2d 122; *People v. Purvis* (4th Dist.), 48 Ill. App. 3d 813, 363 N.E.2d 455; *People v. Ball; People v. Chesnut; People v. Terry* (4th Dist.), 49 Ill. App. 3d 1038, 365 N.E.2d 268.

None of the tests for substantial compliance have been met in the case under consideration for, as we have noted, there is no certificate from the defendant's attorney, there is no transcript of a hearing held on the motion to withdraw plea of guilty, there is nothing else of record to indicate what transpired with regard to the motion and the hearing thereon.

Defendant entered his plea of guilty at a hearing conducted on February 19, 1976, at which he was represented by the public defender. A

sentence hearing was held and sentence imposed on March 3, 1976 at which defendant was again represented by the public defender. Defendant's motion to withdraw his plea of guilty pursuant to Supreme Court Rule 604(d) was filed on March 12, 1976, by privately retained counsel. The transcript of the plea proceeding was filed on that same date of March 12, 1976. The order denying defendant's 604(d) motion was entered on June 17, 1976.

Presumably defendant did confer with his privately retained counsel · prior to the filing of the motion to withdraw the guilty plea else it would not have been filed. The transcript of the plea proceeding was filed the same day as the motion to withdraw the plea of guilty and defendant's privately retained counsel would have had the opportunity to examine it. In any event, the motion to withdraw the guilty plea was not ruled on for three months, thus affording counsel more than ample time to examine the transcript of the plea proceeding and make any amendments to the motion to withdraw he thought appropriate. We would also observe that at the plea proceeding the admonitions of the court to the defendant were thorough and complete and included advice that a consecutive sentence could be imposed.

Nevertheless, we deem it the better practice for the record to disclose, through the agency of a certificate of counsel, that the requirements of Rule 604(d) were in fact fulfilled. In *People v. Sorensen* we stated:

> "In the Supreme Court Rule the examination of the record and transcript of proceedings by defendant's attorney is necessary to ensure an informed hearing on the motion and adequate advocacy of defendant's rights. It was reversible error for the court to rule on the motion when no transcript had been given the defendant nor certificate filed by counsel stating that he had examined the record of proceedings and made any necessary amendments." 49 Ill. App. 3d 984, 986.

Accordingly we remand this case to the trial court with directions that another hearing be held for the purpose of determining whether the privately retained counsel for defendant did comply with the requirements imposed upon counsel by Rule 604(d). In the event the court finds that there was compliance, then the judgment of conviction and sentence are affirmed as hereinabove discussed. In the event the court determines there was not compliance with Rule 604(d) then defendant is to be afforded the opportunity to file an amendment to his motion to withdraw his plea of guilty, raising issues or deficiencies not presented in his original motion. If such action becomes necessary defendant may proceed with either privately retained or appointed counsel, as his

circumstances may require, who shall proceed in accord with Rule 604(d).

Affirmed in part and remanded for further proceedings.

EBERSPACHER, P. J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:
I disagree with the majority's conclusion that the trial court did not abuse its discretion in imposing a sentence of 5 to 20 years to run consecutive to the Jackson County sentence. The Williamson County trial judge committed a clear abuse of discretion in imposing a sentence based on assumptions not supported by the record and in charging defendant with the burden of showing why he should not receive the maximum allowable sentence. The tremendous disparity between the Jackson County sentence and the sentence imposed in this case presents a dramatic example of the potential for abuse and injustice inherent in vesting trial courts with virtually unbridled discretion over sentencing. Unfortunately, the majority fails to recognize the importance of effective appellate review of sentencing, and I believe its cursory review of the Williamson County sentence is an abrogation of this court's duty to prevent arbitrary and oppressive treatment of offenders and to insure that criminal sanctions comport with constitutional and statutory mandates.

Supreme Court Rule 615(b)(4) vests reviewing courts with the power to reduce sentences imposed by trial courts, but it does not specify the appropriate standard of appellate review of sentencing. (58 Ill. 2d Rule 615(b)(4).) Illinois courts have consistently held that sentencing is within the sound discretion of the trial court and a sentence will not be disturbed upon review unless it represents an abuse of discretion. (*People v. Perruquet*, 68 Ill. 2d 149, 153; *People v. Butler*, 64 Ill. 2d 485, 490, 256 N.E.2d 350.) The usual justification offered for this standard of review is that the trial court is in a vastly superior position to evaluate the numerous and sometimes conflicting factors which must be considered in the determination of an appropriate sentence. (*People v. Allen*, 56 Ill. 2d 536, 309 N.E.2d 544.) The mere fact that the trial court has a superior opportunity to observe and evaluate the rehabilitative potential and dangerousness of a criminal offender, however, does not imply that the sentence imposed in a particular case is just and equitable. (*People v. Harpole*, 97 Ill. App. 2d 28, 239 N.E.2d 471; *People v. Grigsby*, 75 Ill. App. 2d 184, 220 N.E.2d 498.) The fact that sentencing decisions are within the discretion of the trial court may affect the nature and scope of appellate review, but it does not preclude meaningful review of sentencing any

more than it has precluded review of a wide variety of other determinations which lie within the discretion of the trial court.

The authority of an appellate court to review and, under appropriate circumstances, reduce a sentence is necessary to insure compliance with constitutional and legislative mandates that sentencing be individualized. (*People v. Bradford,* 1 Ill. App. 3d 38, 272 N.E.2d 259.) Effective appellate review of sentencing is also essential to the development of clear policies and specific guidelines for the sentencing of particular classes of offenders. If the sentencing decisions of trial courts are not made subject to the self-correcting influence of effective appellate review, the potential for abuse inherent in the exercise of unchecked discretion will most certainly lead to arbitrary and unjust sentences. As one commentator has noted:

> "The power of judges to sentence criminal defendants is one of the best examples of unstructured discretionary power that can and should be structured. The degree of disparity from one judge to another is widely regarded as a disgrace to the legal system." K. Davis, Distretionary Justice 133 (1971).

While I agree with the majority that under *Perruquet* sentences should not be disturbed on appeal absent an abuse of discretion, I cannot accept an application of this principle of judicial restraint which in effect relieves this court of any obligation to scrutinize a trial court's exercise of discretion.

The distinction between a proper exercise of judicial discretion and an abuse of discretion is, of course, difficult to define and must be determined within the context of a particular case. The Illinois Constitution and the Unified Code of Corrections establish a number of sentencing policies and guidelines which also provide the basis for an evaluation by a reviewing court of a sentencing court's exercise of discretion. I believe the majority's rather mechanical iteration of the principle of noninterference with sentencing decisions was erroneous and in complete disregard of the constitutional and statutory limits on the trial court's exercise of discretion over sentencing.

Article I, section 11 of the Illinois Constitution establishes a policy regarding sentencing which embodies the dual objective of societal protection and rehabilitation:

> "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."

A trial court has a responsibility to impose a sentence which will adequately punish a convicted defendant, protect the public from future offenses, individualize the punishment to fit the particular offender and offense, and reform and rehabilitate the offender into a productive

member of society. A sentencing court is thus charged with the difficult task of weighing and evaluating a variety of different and often conflicting considerations before passing sentence. The primary emphasis of the Illinois Constitution and the Illinois system of indeterminate sentencing, however, is on the rehabilitation of criminal offenders.

The General Assembly has also established a number of sentencing guidelines applicable to particular classes of offenders and offenses, some of which the trial court relied upon in this case. In imposing a minimum sentence which exceeded the statutory minimum by four years, the court was required to consider "the nature and circumstances of the offense and the history and character of the defendant." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c).) The trial court also ordered the sentence in this case to run consecutive to the Jackson County sentence, a determination which required the court to conclude that a consecutive term was required to protect the public from further criminal conduct. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(b).) Finally, since this case involved an unlawful delivery of a controlled substance, the trial court also had the benefit of the sentencing guidelines provided in the statute relating to sentencing for drug offenses. Ill. Rev. Stat. 1973, ch. 56½, par. 1411.

Upon consideration of these various factors, the trial judge imposed a sentence of 5 years to 20 years, which was based on the judge's conclusion that Randy Garrett was a danger to the public and that lengthy incarceration would provide the best correctional treatment. As the majority notes, however, the real basis for the 5- to 20-year sentence was the trial judge's determination that defendant was a pusher of illicit and highly toxic drugs and therefore presented a serious danger to society. In passing sentence the trial judge commented on the toxicity of heroin and noted that one of the factors to be considered in sentencing a person convicted of a nonpossessory drug offense is how the offender provided for his support at the time of the offense:

> "Of course, heroin is a schedule one drug and is highly toxic, and this is the fourth time for selling it during a two-month period. Of course, it points out non-possessory offenses by a person who has no other visible means of support, and there is nothing in the record here to show that the defendant is working at any other job, and I presume that what the legislature is aiming at there is that this man is making a living selling drugs, and this court thinks the minimum should be raised."

The majority endorses this assessment of defendant's involvement in drug trafficking, apparently believing that the fact that defendant was unemployed at the time of the offense conclusively established that he was making a living from the sale of drugs. This conclusion is not supported by the record and is, in fact, directly contrary to the record.

The trial court's 5- to 20-year sentence was based on the same presentence report used by the Jackson County court in imposing a 15-month to 4-year sentence for virtually the same offense. The presentence report concluded that defendant "has no visible means of support at this time, other than living with his mother and father; however, he does play music with bands occasionally." The record clearly shows that the defendant was being supported by his parents and had occasional part-time employment. The trial court's and the majority's assumption that defendant was engaged in drug trafficking in order to support himself is directly contrary to the record and in effect penalizes defendant for being unemployed, a result which the legislature clearly did not intend and which is repugnant to the ideals underlying our system of criminal justice.

It is apparent that the trial court viewed Randy Garrett's sale of one-third of a gram of heroin as an extremely serious offense. After noting that Garrett made four illegal sales of the drug within a two-month period, the trial judge stated: ·

"My theory is that when an individual is convicted of so many crimes, heinous crimes against society as heroin, that the burden should be shifted from the public to the defendant. He should be the one who has the burden of showing society that he should be returned and released back into society. Society should not have to continue to protect itself and allow persons that sell drugs on the streets."

The majority has approved the trial court's characterization of this offense as a heinous crime against society, noting that heroin is a highly toxic Schedule I drug. The General Assembly, however, has classified delivery of less than 30 grams of heroin as a Class II felony, presumably based on a determination that the sale of heroin in an amount less than 30 grams does not present a serious enough threat to society to justify the severe punishments which may be imposed for the commission of a Class I felony. The majority fails to recognize that the severity of a particular drug offense and the appropriate sentence for that offense is governed by the sentencing provisions of the Uniform Code of Corrections and not by the legislative classification of heroin as a highly toxic substance. While I must agree that the sale and delivery of any amount of heroin is a serious offense, I cannot accept the majority's conclusion that the delivery of approximately one-third of 1 gram of heroin to two police agents who solicited the defendant's participation in the sale is so heinous a crime as to require the lengthy term of incarceration imposed in this case.

The presentence report also notes that defendant previously had a dependency for drugs and had two prior drug related arrests, both for possession of marijuana. Defendant's only other drug offenses were the four sales of very small amounts of heroin to the same two undercover

agents within a period of two months. Defendant stated that he did not receive any money from these sales but gave the proceeds to the supplier of the heroin. This is hardly the record of a major drug pusher and does not, in my opinion, justify the severe sentence imposed by the trial court. Defendant's drug trafficking in this case was initiated by and conducted solely with undercover police agents. I would point out to the majority that the newly enacted sentencing statute requires a trial judge to consider as a factor in mitigation the fact that criminal conduct was induced or facilitated by someone other than the defendant. Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—3.1(5).

The trial court completely disregarded the rehabilitative potential of the defendant. (See *People v. Perruquet*, 68 Ill. 2d 149, 155, 368 N.E.2d 882.) Randy Garrett testified that he was no longer involved in drug trafficking and was planning to go back to school in the near future. The chief of police of Garrett's home town confirmed that he had been an informant for the police and had, in fact, been instrumental in providing information which led to several drug arrests. Yet the trial court disregarded these mitigating factors and concluded that the burden was on the defendant to establish his rehabilitative potential. Although a criminal offender may offer evidence in mitigation in a sentencing proceeding, the offender is not required to meet a particular burden of proof or overcome a presumption in favor of incarceration for the maximum allowable term. It was an abuse of discretion for the trial court to impose such a burden of defendant. It is the duty of the trial court to weigh all the evidence presented and to seriously consider an offender's potential for rehabilitation as well as his danger to society. I believe the record clearly shows that the trial court did not properly discharge its duty to base its sentencing decision on relevant evidence in the record and abused its discretion in imposing a 5- to 20-year consecutive sentence.

The sale of heroin involved here was the last of four sales by defendant which took place within a period of approximately five weeks. The first three sales were made in Carbondale and the last took place 8 miles away in Cambria. Unfortunately for defendant, the last sale was made in a different county than the first three. As defendant notes in his brief on appeal, "[i]ronically, this difference has possibly cost defendant 20 years." Whether the result of unfortunate circumstance or design, the actual effect of defendant's arrest in Williamson County was a dramatic increase in the length of his incarceration for virtually the same course of conduct for which he was sentenced in Jackson County. Such grossly disparate sentencing practices as those exhibited in this case encourage a selective enforcement of the Criminal Code in order to take advantage of the prejudices and idiosyncracies of particular trial judges. As defendant has noted in his brief:

"The offense had been complete and defendant could have been charged at the time of the very first sale, but M.E.G. waited until he had made a sale in a second county several weeks later. Conceivably, they could have waited until he had a string of ten sales in several counties. Such a situation can lead to unbridled discretion in agencies such as M.E.G., unless courts and prosecutors use their discretionary powers to prevent abuse." I would remand the cause for the imposition of a lawful sentence.