(No. 44468.–

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES ALLEN, Appellant.

*Opinion filed March 29, 1974.*

James J. Doherty, Public Defender, of Chicago (Lee T. Hettinger and Ira Churgin, Assistant Public Defenders, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Kenneth L. Gillis and John M. Cutrone, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, James Allen, was convicted of murder in a jury trial in the circuit court of Cook County on September 17, 1970. He was sentenced to a term of from 100 to 200 years in the penitentiary. The defendant

appealed directly to this court under our rules then in effect. 43 Ill.2d R. 603.

On January 24, 1969, the defendant and two others, Larry Gibson and Tyrone Oby, entered the Bell & Howell plant premises in Lincolnwood in a late-model Buick. Oby drove, Gibson was in the front passenger seat and the defendant was lying on the floor of the back seat. They were armed and planned to rob a Thillens armored truck which they thought was due to arrive at the plant about 6:00 P.M. to cash paychecks. Oby parked the car in front of one of the buildings and the three waited for the arrival of the truck. A fourth conspirator, Nathan Wright, proceeded to the general vicinity in another automobile, which was to be the "get-away" car.

The Chicago and Lincolnwood police departments had received information concerning the proposed robbery, and when the defendant and his co-conspirators arrived on the scene, some 20 police officers were waiting for them in concealed positions. Gibson was armed with a .357 magnum revolver; Oby with a .45 automatic pistol and the defendant with an AR-15 semi-automatic rifle, and the police had received information that the men would be armed with these weapons.

The Thillens truck did not appear, and, after waiting for more than an hour, the defendant and his co-conspirators decided to leave. As they started to do so the police department command vehicle ordered the police cars to converge on the Buick. One police vehicle blocked the road, and an officer in another vehicle by the use of a "bullhorn" announced that they were police officers and directed the vehicle to stop and for the occupants to throw out their guns. The Buick stopped, started moving rapidly in reverse, and then came to a stop. Shooting erupted from the Buick, and the police returned the fire. During the shooting Officer Singleton of the Chicago Police Department, who along with his partner had been in another police vehicle, was wounded. From this wound he subse-

quently died. The defendant was prosecuted for the murder of Officer Singleton.

During the shooting Oby, who was driving the Buick, was killed. Three shots had been fired from his .45-caliber automatic pistol. Gibson, who was in the front passenger seat, was wounded. As the police started to open the front door, Gibson raised his weapon and was shot and killed. There were two spent cartridges in his .357-caliber magnum revolver. The defendant was lying in the rear seat of the Buick on the AR-15 rifle. There were 19 rounds of ammunition in the magazine and one round of ammunition in the chamber. The rifle when fully loaded holds 20 rounds in the magazine and one round in the chamber. Another magazine containing 20 rounds was found in the back seat of the car.

Officer Singleton lived for about 10 months following the shooting. During this time the defendant had been charged with attempt to murder Officer Singleton. At that trial Officer Singleton testified. Later at the trial for the murder of Officer Singleton, the testimony of the officer given at the previous trial was read in evidence over the defendant's objection.

The defendant and Nathan Wright were charged with murder in a two-count indictment. The first count charged that the defendant and Wright committed the offense of murder in that they intentionally and knowingly shot and killed Singleton with a gun "in violation of Chapter 38, Section 9–1, of the Illinois Revised Statutes 1967." The second count charged that the defendant and Wright committed the offense of murder in that they shot and killed Singleton with a gun knowing that such shooting with a gun created a strong probability of death or great bodily harm to Singleton "in violation of Chapter 38, section 9–1(a)(2), of the Illinois Revised Statutes 1967."

The defendant contends that there is no evidence that he fired a shot and that he could therefore not be found guilty of the offense charged in either count of the

indictment. He contends that the only theory that would support his conviction is one that in some way would hold him accountable for the acts of some other person.

The record does not support the contention that the defendant did not fire a shot. As noted above the AR-15 semi-automatic rifle when fully loaded has 20 rounds in the magazine and one in the chamber. The defendant's weapon when seized had 19 rounds in the magazine and one in the chamber. The bullet that had wounded Singleton had passed through his body and was not recovered, so no ballistic identification could be made. However, an officer at the scene of the crime testified that following the shooting he had examined the three weapons taken from the Buick automobile and that there was an odor of burnt powder on all three weapons, including the AR-15 semi-automatic rifle. Also a ballistic expert from the Chicago Police Department testified that he had examined the rifle and its barrel contained powder residue. There is, therefore, evidence from which the jury could conclude that the defendant had fired his weapon. However, as discussed later, it is not necessary to find that the defendant fired the shot that wounded the officer. Under the facts of this case the defendant was accountable regardless of who fired the shot.

As to accountability, defendant contends that the State had to prove beyond a reasonable doubt that he performed some affirmative act in aiding and abetting the *murder.* Relying on *People v. Shields,* 6 Ill.2d 200, and *People v. Ramirez,* 93 Ill. App. 2d 404, the defendant contends that mere presence at the commission of the crime "is not culpable." The defendant urges a more narrow interpretation of our accountability statute (Ill. Rev. Stat. 1967, ch. 38, par. 5–2) than is justified.

We have recently rejected an argument similar to defendant's. In *People v. Johnson,* 55 Ill.2d 62, we held that where murder is committed during a robbery all

participants in the robbery are deemed guilty of murder and it is immaterial who fired the fatal shot. (See also *People v. Weber,* 401 Ill. 584; *People v. Armstrong,* 41 Ill.2d 390; *People v. Golson,* 32 Ill.2d 398; *People v. Bongiorno,* 358 Ill. 171.) We likewise held in *Johnson* that if a killing is committed in the course of an escape or prior to the time that the perpetrators of a robbery had "won their way to a place of safety" each conspirator is guilty of murder. See also *People v. Golson* and *People v. Bongiorno.*

There is evidence here of conduct by the defendant other than mere presence at the scene of the crime. He actively participated in the preparation for and the attempted fulfillment of the plan to rob the Thillens money truck. His own statement details the preliminary discussion and planning of the robbery. In preparation therefor he learned how to operate the AR-15 rifle he was to use. He stole license plates to put on the Buick that was to be used in the robbery. Fully armed with the rifle he traveled with his conspirators to the Bell & Howell parking lot where he with his conspirators waited for their intended victim. When frustrated, they attempted to escape, and during the attempt Officer Singleton was shot. His involvement bears no resemblance to that of the defendants in *Shields* and *Ramirez.* Evidence that the defendant voluntarily attached himself to a group bent on illegal acts with knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction of an offense committed by another. *People v. Rybka,* 16 Ill.2d 394.

The defendant contends that he was indicted under sections 9—1(a)(1) and 9—1(a)(2) of the Criminal Code and was charged with having shot and killed Officer Singleton and with having shot Singleton with a gun knowing that such shooting created a strong probability of death or bodily harm. He was not indicted for felony

murder under section 9—1(a)(3). (Ill. Rev. Stat. 1967, ch. 38, par. 9—1(a)(3).) However, the jury was instructed on the theory of felony murder. Section 9—1 provides:

> "(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which caused the death:
> (1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
> (2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or
> (3) He is attempting or committing a forcible felony other than voluntary manslaughter."

The defendant contends that felony murder is a distinct crime from murder as defined in sections 9—1(a)(1) and (a)(2) and since he was not charged with felony murder it was a denial of due process for the court to instruct the jury on that crime. Defendant contends that it is reversible error to instruct on a crime not charged in the indictment.

This argument has likewise been previously considered by this court and answered contrary to the defendant's position. In *People v. Rosochacki,* 41 Ill.2d 483, the defendant had been charged with murder as defined in section 9—1(a)(1) and the jury was instructed as to what constitutes murder under section 9—1(a)(2) and (a)(3). This court stated at page 492: "We find that the defendant here was charged with murder and convicted of that crime, and even if a variance did exist between the type of murder charged in the indictment and the types described in the instructions, it would not vitiate the conviction unless it was of such a character as to mislead the defendant in his defense or expose him to double jeopardy. [Citations.] There is no evidence in this case whatsoever that the defendant was misled in his defense, nor did counsel at any time during the proceedings request additional time, allege surprise, or claim that it was

impossible for him to prepare a defense to the proof being offered against him." See also *People v. McKee,* 39 Ill.2d 265; *People v. Nelson,* 33 Ill.2d 48; *People v. Figgers,* 23 Ill.2d 516.

Under section 9—1 there is but one crime of murder, not three separate and distinct offenses as the defendant's argument assumes. Each of subparagraphs (1), (2) and (3) under section 9—1(a) describes the mental state or the conduct of the defendant which must accompany the acts which cause the death. If the defendant were charged with murder under subparagraph (a)(1) and acquitted, he could not again be charged and tried for the murder of the same individual under subparagraph (a)(2) or (a)(3). Thus, there is no possibility that the defendant in this case could have been twice put in jeopardy. Also, the provision of our statute covering the effect of a former prosecution (Ill. Rev. Stat. 1967, ch. 38, par. 3—4) prohibits a subsequent prosecution of the defendant under such circumstances.

The record does not show that the defendant was in any way misled by the indictment in the preparation of his defense. He obviously was aware of the felony-murder theory of the State from the opening statement through the instructions to the jury. He never objected thereto nor did he allege surprise or ask for a continuance for the purpose of preparing a defense to this charge. The conference on instructions reveals that the defendant was not surprised by the felony-murder theory. Objections to the felony-murder instructions were not made on the basis of this contention. It was therefore not error for the court to instruct the jury under section 9—1(a)(3).

The court also gave the State's instruction No. 19, which instructed the jury that if the initial shot was fired by the defendant or one for whose conduct he was legally accountable and that the police officers retaliated, it was immaterial as to who fired the shot that killed Officer Singleton. The defendant, under the law, would be legally responsible for the death. It had been the defendant's

theory of defense that the shot which wounded Officer Singleton had been fired by another police officer. The defendant now contends that instruction No. 19 was an erroneous statement of the law and that the giving of the same was reversible error.

The defendant's post-trial motion in reference to the State's instructions alleges: "The court erred in giving the State's instructions that were objected to." The transcript of the conference on instructions reveals that there was no objection to the State's instruction No. 19. Twice in the transcript of the conference on instructions it is revealed that there was apparent agreement between the prosecutor and defense counsel that the State's instruction No. 19 would be given without objection and that the State in turn would withdraw its instruction No. 14, which was a general accountability instruction. The first instance was when the State's instruction No. 14 was being discussed:

"THE COURT: And 14 is withdrawn?

MR. NOVELLE: Our 14 is withdrawn. That is withdrawn in conjunction with 19, which is given without objection."

Later when instruction No. 19 was being considered:

"MR. NOVELLE: 19 is given, with no objection, with our withdrawal of 14."

Thus, not only was the State's instruction No. 19 not objected to by the defendant, it was apparently given pursuant to an agreement between the prosecutor and the defense counsel. The defendant cannot complain of the instruction given by agreement. *People v. McGregor,* 26 Ill.2d 239.

We further note that previous decisions of this court support the statement of the law contained in Instruction No. 19. In *People v. Payne* 359 Ill. 246, at 255, the court stated: "It reasonably might be anticipated that an attempted robbery would meet with resistance, during which the victim might be shot either by himself or someone else in attempting to prevent the robbery, and

those attempting to perpetrate the robbery would be guilty of murder." In support of this statement the court relied upon its previous decision in *People v. Krauser,* 315 Ill. 485.

Also the Committee Comments to section 9—1 of the Criminal Code (S.H.A., ch. 38, sec. 9—1, Committee Comments, p. 9 (1972)) indicate that it was the intent of those who drafted the felony-murder section of the statute to incorporate therein the holding in *People v. Payne.* The Comments state: "It is immaterial whether the killing in such a case is intentional or accidental, or is committed by a confederate without the connivance of the defendant *** or even by a third person trying to prevent the commission of the felony." In support of the last statement the Committee cites *People v. Payne.* We therefore hold that the defendant in this case may be held liable for the death of Officer Singleton whether the fatal shot was fired by a co-felon in the furtherance of the attempted robbery or by another police officer in opposition to the attempted robbery.

The defendant contends that he was denied his constitutional right to confront a witness against him when the testimony of the deceased Officer Singleton which had been taken at a prior trial was admitted into evidence. Officer Singleton lived for 10 months after he was shot. The defendant had been indicted and tried for attempted murder. Although Officer Singleton was in extremely poor physical condition, he testified at the defendant's prior trial. He stated that he was shot immediately after gunfire had erupted from the Buick automobile and that the shot that hit him came from the Buick. Although defense counsel had an opportunity to cross-examine Officer Singleton at that trial, he chose not to do so.

The defendant relies on *Pointer v. Texas,* 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065, to support his contention that he was denied the right to confront the witness against him. However, the Supreme Court in

*Pointer,* in discussing this subject, stated: "The case before us would be quite a different one had Phillips' statement been taken at a full-fledged hearing at which petitioner had been represented by counsel who had been given a complete and adequate opportunity to cross-examine." 280 U.S. at 407, 13 L. Ed. 2d at 928.

In Wigmore, Evidence (3d ed. 1940), sec. 1398, it is stated: "[I] t is well and properly settled that *depositions and former testimony*—assuming always that there has been a due cross-examination—are admissible for the State in a criminal prosecution, without infringing the Constitution." See also Wigmore, Evidence (3d ed. 1940), secs. 1402, 1403; McCormick, Evidence (2d ed. 1972), secs. 253 and 255; *People v. Jackson,* 41 Ill.2d 102.

The defendant contends that because of Singleton's poor physical condition at the former trial he was not able to cross-examine him. Prior to the officer testifying at the former trial the court conducted an *in camera* hearing to determine whether he was able to testify. The court concluded that he was and he did testify. No restriction was placed upon the defendant's right to cross-examine Singleton. The fact that he chose not to do so cannot now be said to constitute a denial of his right to cross-examine. The defendant was represented at the former trial by the same counsel that represented him at the murder trial. The issues concerning which Singleton's testimony was offered were the same in both trials. These concerned, primarily, the fact that he was wounded by a shot fired from the Buick. We conclude that the prior testimony of Officer Singleton was properly admitted and that the defendant was not denied his constitutional right of confronting the witness.

The defendant finally contends that the sentence imposed is excessive. We do not agree. This was not a murder which resulted from an argument or a domestic quarrel and committed by a person who had never been in

trouble. This murder was the end result of a well-planned and organized serious crime for which the defendant came armed with a high-powered weapon. As a result a Chicago police officer was killed. The defendant was not a first offender. He had been previously sentenced to the House of Correction on a theft charge, and almost immediately upon his release he was again convicted of theft and sentenced to the Illinois State Farm at Vandalia. Within a few months after his release from that institution, he was arrested on a felony charge and convicted and sentenced to the penitentiary for a term of from 1 to 3 years. Soon after his parole he was involved in this incident involving the death of Officer Singleton. His first conviction was in April, 1967. The shooting occurred on January 29, 1969, less than 2 years later. There were two other convictions between the two dates. The defendant had not proved to be receptive to rehabilitative influences, a fact which the court may well have considered when imposing sentence. This court has said many times that the trial court is in a superior position to make the determination as to the sentence and that the authority of the reviewing court to reduce the sentence should be applied with considerable caution and circumspection. (*People v. Sprinkle,* 56 Ill.2d 257; *People v. Taylor,* 33 Ill.2d 417, 424.) We do not think that under the circumstances of this case this court should disturb the sentence imposed by the trial court.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*