(No. 83722.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ERIC D. DANIELS, Appellant.

*Opinion filed June 17, 1999.—Rehearing denied October 4, 1999.*

302

HARRISON, J., concurring in part and dissenting in part.

Charles M. Schiedel, Deputy Defender, and Kim Robert Fawcett, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and John C. Piland, State's Attorney, of Urbana (Barbara A. Preiner, Solicitor General, and William L. Browers and Bridget L. Field, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Defendant Eric Daniels has been tried twice in the circuit court of Champaign County for the murder, armed robbery and sexual assault of Michelle Davis. At his first trial, a jury convicted defendant of first degree murder, armed robbery and aggravated criminal sexual assault. Thereafter, the trial court sentenced him to death. This court reversed defendant's convictions and sentence on procedural grounds and remanded the cause for a new trial.

Following his second trial, a jury acquitted defendant of armed robbery and could not reach a verdict on the remaining counts. Because the jury was unable to reach a verdict on the remaining counts, the trial court, without objection from defendant, declared a mistrial as to all counts except the armed robbery. Defendant was discharged on the armed robbery count.

Facing a third trial, defendant moved the trial court to dismiss the felony-murder charges that formed a partial basis for the first degree murder counts alleged by the State. Defendant also moved to bar any death penalty sentencing hearing that depended on felony mur-

der as a statutory eligibility factor. Defendant maintained that a retrial and resentencing based on felony murder would violate the bar against double jeopardy. The trial court denied defendant's motions and motions to reconsider.

Defendant filed a notice of appeal pursuant to Illinois Supreme Court Rule 604(f), which allows appeals to the appellate court from orders denying a motion to dismiss based on "grounds of former jeopardy." 145 Ill. 2d R. 604(f). The State then moved this court to order the appeal transferred from the appellate court to the supreme court, as a matter of "public interest requir[ing] prompt adjudication by the Supreme Court" (134 Ill. 2d R. 302(b)). We granted the motion.

### BACKGROUND

In a 10-count indictment filed on August 5, 1993, the State charged defendant with the first degree murder, aggravated criminal sexual assault and armed robbery of Michelle Davis. Counts I and II of the indictment alleged that defendant murdered Davis intentionally; counts III, IV and V asserted that defendant knowingly performed the acts causing Davis' death. Counts VI and VII stated two theories of felony murder: first, that defendant shot Davis during the course of an aggravated criminal sexual assault (count VI) and second, that defendant shot Davis during the course of an armed robbery (count VII).

In count VIII of the indictment, the State accused defendant of committing a criminal sexual assault aggravated by the display of a shotgun. Count IX also alleged the commission of an aggravated criminal sexual assault, but the aggravating factor was the commission of an armed robbery. Lastly, in count X, the State charged defendant with the commission of an armed robbery.

At defendant's first trial, the jury returned verdicts finding defendant guilty of armed robbery and aggravated criminal sexual assault, and a general verdict finding de-

fendant guilty of first degree murder. After a separate sentencing proceeding, the trial court found defendant eligible for the death penalty based on the single factor that defendant murdered Michelle during the course of a felony. 720 ILCS 5/9—1(g) (West 1996). The trial court sentenced defendant to death on the first degree murder conviction and sentenced defendant to 60 years' imprisonment on the other convictions. *People v. Daniels*, 172 Ill. 2d 154 (1996).

On direct appeal, this court held that the trial court denied defendant the proper number of peremptory challenges during jury selection. *Daniels*, 172 Ill. 2d at 168. It reversed defendant's convictions and sentences and remanded the cause for a new trial. *Daniels*, 172 Ill. 2d at 169. Significant to the instant appeal, in that decision this court also stated that the evidence of record adequately supported the convictions and sentences. *Daniels*, 172 Ill. 2d at 168.

Before the commencement of the second trial, defendant moved to dismiss counts VI, VII and IX of the indictment. Defendant maintained that in the first trial, the State tendered jury instructions concerning intentional and knowing murder (720 ILCS 5/9—1(a)(1), (a)(2) (West 1996)), but neglected to submit any instructions concerning felony murder, as charged in counts VI and VII of the indictment. 720 ILCS 5/9—1(a)(3) (West 1996). Similarly, the State failed to tender instructions directing the jury to decide whether defendant committed criminal sexual assault during the course of an armed robbery (720 ILCS 5/12—13(a)(1), 12—14(a)(4) (West 1996)), as alleged in count IX of the indictment. Defendant posited that the State's failure to submit those jury instructions warranted an "acquittal" on counts VI, VII and IX, because, absent those instructions, counts VI, VII and IX were not submitted to the jury for decision. Thus, defendant's argument continues, double jeopardy barred reprosecution of defendant for these alleged crimes.

Defendant also moved to bar the State from asserting felony murder as an eligibility factor at a future capital punishment hearing. 720 ILCS 5/9—1(g) (West 1996). According to defendant, the bar against double jeopardy prohibited the State from again arguing felony murder as a factor for entry of a capital sentence against defendant. The circuit court denied defendant's motion.

At his second trial, the jury acquitted defendant of the armed robbery charge (count X). The jury could not reach a verdict on the remaining counts, and the trial court declared a mistrial. No capital sentencing proceeding occurred.

Post-trial, defendant renewed his motion to dismiss count VI, the count which charged that defendant shot Davis during the course of an aggravated criminal sexual assault, count VII, the count which charged defendant with felony murder committed during the course of an armed robbery, and count IX, which charged defendant with a criminal sexual assault committed during the course of an armed robbery. Defendant repeated the double jeopardy arguments he asserted on the eve of the second trial. Additionally, defendant urged that his acquittal of armed robbery in the second trial necessitated dismissal of counts VII and IX. Defendant argued that in his second trial, as in the first trial, the State chose not to tender an instruction to the jury to determine whether defendant committed criminal sexual assault during the course of an armed robbery, as alleged in count IX of the indictment.

Further, defendant renewed his motion to bar the introduction of felony murder as a statutory eligibility factor at any subsequent death penalty hearing. Defendant insisted that his implicit "acquittal" of felony murder because of the State's failure to submit the appropriate jury instructions—thus removing those counts from determination by the jury—at the first trial precluded

another capital sentencing proceeding grounded on felony murder.

Defendant also raised a new argument to preclude another death penalty hearing. He argued that, absent a unanimous verdict by the trier of fact in favor of a capital sentence, a criminal defendant may not be put to death. See 720 ILCS 5/9—1(g) (West 1996). Defendant deduced that the hung jury at the second trial indicated that the jury reached a "nonunanimous" finding on all counts, except armed robbery. In other words, at least one juror voted to acquit defendant on all counts except armed robbery. According to defendant, this "nonunanimous" result at the guilt/innocence phase foretold a "nonunanimous" verdict by the jury regarding defendant's eligibility for the death penalty, as well. Therefore, because the jury could not have returned a unanimous verdict finding defendant eligible for the death penalty based on the commission of a felony murder, the court should bar the State from asserting felony murder as a basis to sentence defendant to death in any future trial.

The trial court ruled that defendant's acquittal of armed robbery (count X) necessitated dismissal of counts VII and IX, since each count depended on armed robbery as its underlying felony. However, the court denied defendant's motion as to count VI (murder committed during the course of a criminal sexual assault), and refused to bar the State from seeking the death penalty in any future trials based on defendant's alleged complicity in a felony murder.

Defendant now appeals the circuit court's order.

## STANDARD OF REVIEW

When, as here, the issues raised are purely issues of law, we review the record *de novo*. *In re Lawrence M.*, 172 Ill. 2d 523, 526 (1996).

ANALYSIS

A. Whether the Bar Against Double Jeopardy Precludes a Third Trial for Defendant on the Charge of Felony Murder

As best we can discern from his briefs, defendant's theory of the case is as follows: defendant asserts that the State's failure to tender jury instructions at defendant's first trial concerning counts VI and VII, charges of felony murder, constituted an abandonment by the State of those counts. Defendant's argument is based on the fact that since neither instructions nor verdicts on the felony-murder counts were submitted by the State, the jury was denied the opportunity to reach a verdict on the felony-murder allegations. Defendant reasons that the jeopardy that attached after the jury was empaneled in the first trial "terminated" once the court discharged the jury. Because jeopardy terminated without a resolution of the felony-murder counts, defendant maintains, defendant was "acquitted" of felony murder "by operation of law." Alternatively, defendant argues that the State's failure to tender felony-murder instructions and verdicts operated as a *nolle prosequi* of the felony-murder counts, which, in turn, constituted an acquittal of defendant on the allegations found in counts VI and VII. Therefore, defendant contends that double jeopardy principles should have barred the second trial on both the threshold question of defendant's guilt or innocence of felony murder, as well as another death penalty proceeding grounded on the statutory eligibility factor of felony murder. 720 ILCS 5/9—1(b)(6) (West 1996).

At defendant's second trial, the jury could not reach a verdict on any count except count X, which charged defendant with armed robbery. The trial court declared a mistrial on the remaining counts, including the felony-murder counts, rendering defendant eligible for a third trial. Defendant successfully moved the trial court to

dismiss count VII, the felony-murder charge grounded in armed robbery, but count VI, the felony-murder charge grounded in criminal sexual assault, remains viable. Accordingly, defendant now renews his double jeopardy arguments, seeking to preclude a third trial on count VI. Defendant argues that a third trial on the felony-murder allegations of count VI would violate (1) the double jeopardy clauses of the state and federal constitutions, and (2) the Criminal Code of 1961.

The fifth amendment to the United States Constitution states in pertinent part:

> "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb ***." U.S. Const., amend. V.

The same protections are also embodied in the Illinois Constitution. Ill. Const. 1970, art. I, § 10.

The bar against double jeopardy derives from an intent to promote fairness and finality in legal proceedings. *United States v. Wilson*, 420 U.S. 332, 343, 43 L. Ed. 2d 232, 241, 95 S. Ct. 1013, 1021-22 (1974).

> "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187-88, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223 (1957).

Consequently, the State may not retry a person for a crime of which he has previously been acquitted or convicted, nor may the State subject a defendant to multiple punishments for the same offense. *Wilson*, 420 U.S. at 343, 43 L. Ed. 2d at 241, 95 S. Ct. at 1021; *People v. Levin*, 157 Ill. 2d 138, 143-44 (1993).

Certain caveats apply to the double jeopardy principle. For example, "[t]he protections against double jeopardy

are triggered only after an individual has been subjected to the hazards of trial and possible conviction." *People v. Shields*, 76 Ill. 2d 543, 546 (1979). In a jury trial, jeopardy attaches when the jury is empaneled and sworn. *Shields*, 76 Ill. 2d at 546. The prohibition against placing a defendant in double jeopardy will not preclude a second trial if defendant successfully appeals a conviction, and the reviewing court reverses the conviction on grounds other than the sufficiency of the evidence. *Burks v. United States*, 437 U.S. 1, 18, 57 L. Ed. 2d 1, 14, 98 S. Ct. 2141, 2150-51 (1978). Also, the State may retry a defendant if a deadlocked jury prompts the trial court to declare a mistrial. *People v. Cole*, 91 Ill. 2d 172, 175 (1982).

Section 3—4(a) of the Criminal Code of 1961 furnishes criminal defendants with additional protection against multiple prosecutions:

> "A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if such former prosecution:
>
> > (1) Resulted in either a conviction or an acquittal or in a determination that the evidence was insufficient to warrant a conviction; or
> > ***
> > (3) Was terminated improperly after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts, or after a plea of guilty was accepted by the court." 720 ILCS 5/3—4 (West 1996).

In the instant appeal, defendant contends that the State abandoned the felony-murder theory after jeopardy attached in the first trial. Defendant reasons that, after the trial court discharged the jury without resolution of the felony-murder counts, jeopardy "terminated" as to those counts, thereby acquitting defendant of felony murder "by operation of law." (In the parlance of double jeopardy case law, jeopardy "continues" if a conviction is reversed on appeal or if the trial ends in a mistrial, *i.e.*,

any situation in which the jeopardy that attached in the first trial remains open so that defendant can be reprosecuted for the same crime without violating the bar against double jeopardy. Jeopardy "terminates" if the trial concludes under conditions in which defendant could not be retried without violating the double jeopardy rule, *e.g.*, if defendant is acquitted of a crime. See *Saylor v. Cornelius*, 845 F.2d 1401, 1404 (6th Cir. 1988).

Alternatively, defendant maintains that the State effectively nol-prossed, or dismissed, the felony-murder charge against defendant. Defendant concludes that this functional "dismissal" of count VI was thereby also an acquittal on that count. Thus, defendant presents the following issues for our determination: Did the jury "acquit" defendant of the felony-murder charge, so that a retrial of count VI would be barred by the double jeopardy rule? Did the State, in effect, nol-pros count VI? If so, would that action preclude a second trial, and now a third trial, on count VI?

An acquittal is "a verdict or finding of not guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." 720 ILCS 5/2—1 (West 1996); *People v. Quigley*, 183 Ill. 2d 1, 12 (1998). "An acquittal generally requires some resolution of a defendant's factual guilt or innocence" (*Quigley*, 183 Ill. 2d at 12), or the State's acquiescence to orders dismissing charges against the defendant with prejudice (*People v. Rudi*, 103 Ill. 2d 216, 224 (1984)).

The jury chosen for the first trial in this case never reached a verdict, nor did it make any finding concerning defendant's guilt or innocence of the felony-murder charges. Indeed, the jury had no opportunity to return a verdict on the felony-murder allegations, since neither felony-murder instructions nor felony-murder verdicts were tendered to the jury. The record does not reveal

that the State agreed to any order dismissing the felony-murder charges with prejudice. Defendant was, therefore, not acquitted of felony murder.

Nor do we find that the State's failure to submit instructions on the felony-murder charge(s) amounted to a *nolle prosequi*. "A *nolle prosequi* is the formal entry of record by the prosecuting attorney by which he declares that he is unwilling to prosecute a case." *People v. De-Blieck*, 181 Ill. App. 3d 600, 603 (1989). A motion to nol-pros is comparable to a motion to dismiss. *People v. Verstat*, 112 Ill. App. 3d 90, 103 (1983).

> " 'A *nolle prosequi* is not a final disposition of the case, and will not bar another prosecution for the same offense. It is not an acquittal, but it is like a nonsuit or discontinuance in a civil suit, and leaves the matter in the same condition in which it was before the commencement of the prosecution.' [Citation.] *** [T]he ordinary effect of a *nolle prosequi* is to terminate the charge to which it is entered and to permit the defendant to go wherever he pleases, without entering into a recognizance to appear at any other time." *People v. Watson*, 394 Ill. 177, 179 (1946).

See also *People v. Woolsey*, 139 Ill. 2d 157, 163 (1990).

If the allowance of a motion to nol-pros is entered before jeopardy attaches, the *nolle prosequi* does not operate as an acquittal, and a subsequent prosecution for the same offense could legally proceed. *Watson*, 394 Ill. at 179. Conversely, the granting of a motion to nol-pros after jeopardy attaches has the same effect as an acquittal, and the State may not pursue those charges in a subsequent trial. See *People v. Blake*, 287 Ill. App. 3d 487, 491 (1997).

In the present appeal, we discern no intent by the State to dismiss the felony-murder counts placed against defendant. The State never moved to dismiss those charges, nor was there ever an entry of record declaring an intent by the State not to prosecute the felony-murder charges. We find no basis to conclude that the State sought or received a *nolle prosequi* of the felony-murder

counts. Defendant's assertion that he was "acquitted" by virtue of the alleged *nolle prosequi* necessarily fails.

Additionally, the State argues that first degree murder is considered a "single offense." 720 ILCS 5/9—1 (West 1996); *People v. Allen*, 56 Ill. 2d 536, 543 (1974). Subsections (a)(1), (a)(2), and (a)(3) of section 9—1 of the Criminal Code, defining intentional murder, knowing murder and felony murder, delineate only the mental state or conduct that must accompany the acts that cause a death. 720 ILCS 5/9—1(a)(1) through (a)(3) (West 1994); *Allen*, 56 Ill. 2d at 543. Subsections (a)(1), (a)(2), and (a)(3) of section 9—1 do not describe separate offenses. *Allen*, 56 Ill. 2d at 543. As a consequence, an acquittal on any of the three subsections of section 9—1 precludes subsequent prosecution under any of the remaining two subsections. *Allen*, 56 Ill. 2d at 543. Similarly, the bar against double jeopardy operates to prevent a later prosecution for the same murder if the State successfully convicts a defendant under any subsection of section 9—1. 720 ILCS 5/3—4(a) (West 1996); *People v. Laramore*, 163 Ill. App. 3d 783, 792 (1987).

Applying these principles to the case at bar, the State argues that the reversal by this court of defendant's conviction following the first trial for knowing and intentional murder, permits defendant to be subjected to prosecution again on all three theories of first degree murder. The State argues that the mistrial on all but the armed robbery count at the second trial raises no double jeopardy bar to a third trial on the first degree murder charges.

We agree. Defendant's conviction for first degree murder at the first trial was overturned on a matter of trial error. *Daniels*, 172 Ill. 2d at 168. The court expressly found the evidence adduced at the first trial adequate to sustain the conviction. *Daniels*, 172 Ill. 2d at 168. Thus, the State could subject defendant to a second trial on the

two theories of culpability (intentional and knowing murder) affected by our reversal. Moreover, because felony murder is subsumed in the offense of first degree murder and because defendant had not been acquitted or convicted on any theory of first degree murder in the first trial, the State could retry defendant on the felony-murder counts. *Allen*, 56 Ill. 2d at 543. Lastly, because the trial court declared a mistrial following the second trial on all but the armed robbery charges, double jeopardy principles do not bar a subsequent trial on the first degree murder allegations.

Defendant responds that, by allowing the State to retry defendant on the felony-murder charge after jeopardy attached in the first trial, the trial court violated the fundamental principles of fairness that animate the double jeopardy clause. By permitting the State successive bites at the apple, defendant must endure punitive costs and inconvenience. As noted in *Green*, 355 U.S. at 187-88, 2 L. Ed. 2d at 204, 78 S. Ct. at 223, each time the State tries its case, the presentation is surer and more polished, increasing the likelihood of a prosecution which would result in defendant's conviction.

While we agree that successive prosecutions are "the primary evil" sought to be prevented by the double jeopardy clause (*Schiro v. Farley*, 510 U.S. 222, 230, 127 L. Ed. 2d 47, 57, 114 S. Ct. 783, 789 (1994)), we conclude that a third trial in this case on the felony-murder charge is consonant with existing double jeopardy principles. Additionally, none of the cases on which defendant relies compels a different result.

In *Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir. 1988), the Commonwealth of Kentucky indicted defendant Saylor on one count of murder. The indictment "encompassed" murder as a principal, murder as an accomplice and murder by conspiracy. *Saylor*, 845 F.2d at 1402. Nevertheless, the trial court, with the Commonwealth's ac-

quiescence, instructed the jury solely on the conspiracy theory.

The jury returned a guilty verdict. The Kentucky Supreme Court reversed defendant's conviction, finding insufficient evidence to support the conspiracy instructions and verdict. The supreme court subsequently held that defendant could be retried on a theory of accomplice liability.

On a petition for writ of *habeas corpus*, the United States Court of Appeals for the Sixth Circuit ruled that the double jeopardy clause barred a retrial on accomplice liability. The Sixth Circuit ruled that, in the first trial, jeopardy attached on all of the charges against defendant, including the accomplice liability charge. Once the jury returned a verdict, jeopardy terminated, just as it would terminate if the jury made a finding of guilt or innocence. In *Saylor*, however, the jeopardy terminated because the trial court, with the Commonwealth's tacit approval, failed to tender an instruction on the accomplice charge. *Saylor*, 845 F.2d at 1404.

The *Saylor* court did not allow another trial on defendant's accomplice liability merely to permit the prosecutor to correct the mistake he made in the first trial by failing to submit an instruction on accomplice liability. Also, the court refused to allow the Commonwealth to hold some theories of a defendant's guilt "in reserve," believing that a defendant could be retried on those theories if the counts actually submitted to a jury did not result in a conviction. *Saylor*, 845 F.2d at 1408.

The facts of *Saylor* differ materially from the facts in the instant appeal. The *Saylor* opinion indicates that the theories of murder "as a principal," conspiracy to commit murder, and accomplice liability for a murder constitute multiple offenses in Kentucky. *Saylor*, 845 F.2d at 1408. In particular, the *Saylor* court indicated that a murder conviction based on accomplice or principal guilt

would not have precluded a later trial on conspiracy to commit murder:

> "As there is no necessary logical nexus between the two theories charged in the indictment, a retrial might be permitted whether Saylor was convicted and the conviction affirmed, convicted and the conviction reversed for procedural error, convicted and the conviction reversed for insufficiency ***, or, in fact acquitted." (Emphasis added.) Saylor, 845 F.2d at 1408. ·

In this appeal, however, the comprehensiveness of the first degree murder charge is central to the outcome of the case. Significantly, first degree murder is a single offense, and the different theories embodied in the first degree murder statute (720 ILCS 5/9—1 (West 1996)) are merely different ways to commit the same crime. Allen, 56 Ill. 2d at 543. A conviction on any one of the theories of first degree murder operates to bar a second trial on a theory not prosecuted. Allen, 56 Ill. 2d at 543. Thus, had the State charged defendant with intentional murder alone, and had the jury returned a not-guilty verdict, the State could not, in a later trial, seek to convict defendant of the same murder pursuant to a theory of felony murder or knowing murder. Allen, 56 Ill. 2d at 543. Further, had defendant's appeal of his convictions for intentional and knowing murder been unsuccessful, or if a reviewing court found the evidence insufficient to sustain those convictions, defendant could not be retried for the same murder on a different or separate theory of first degree murder. Burks, 437 U.S. at 18, 57 L. Ed. 2d at 14, 98 S. Ct. at 2150; Laramore, 163 Ill. App. 3d at 792.

Therefore, the "logical nexus" (Saylor, 845 F.2d at 1408) missing between the crimes charged against the defendant in Saylor ties together the different theories of the single crime of first degree murder charged in this case. The existence of the nexus is important because, unlike Saylor, a conviction or acquittal on one theory of murder would determine whether a defendant could be

tried on another theory of murder. In addition, the presence of the nexus in the instant appeal means that because of the reversal of defendant's convictions after the first trial, followed by a mistrial on, *inter alia*, the murder counts after the second trial, the offense of first degree murder, with all of the theories subsumed in that single crime, can be retried without violating double jeopardy principles.

Defendant directs our attention to *Wilson v. Meyer*, 665 F.2d 118 (7th Cir. 1981). In *Wilson*, the State indicted defendant in three separate counts for the murder of a law enforcement officer. The counts charged felony murder, intentional murder and armed robbery. The trial court instructed the jury on all three theories of guilt and the jury found defendant guilty on all three charges.

Following the return of the jury verdict, but before sentencing, the State nol-prossed the felony-murder count. The circuit court sentenced defendant on the remaining counts. Defendant's conviction for first degree murder was reversed on appeal. The State prosecuted defendant again. Over defendant's objection, the State introduced evidence in support of the felony-murder count against defendant, as well as the intentional murder count.

In a subsequent *habeas* proceeding, the Seventh Circuit Court of Appeals held that, once the trial court granted the State's motion for *nolle prosequi*, the bar against double jeopardy foreclosed the State's opportunity to seek a future conviction for felony murder. The Seventh Circuit addressed directly the State's contention that, because Illinois views first degree murder as a single offense, the reversal of defendant's conviction for intentional murder "wiped the slate clean" of the first degree murder indictments. *Wilson*, 665 F.2d at 124. The State posited that, in a later proceeding, it could charge defendant anew under each of the first degree murder theories, including felony murder.

The Seventh Circuit disagreed. The court interpreted the nol-pros of the felony-murder count as "an indication by the State that it would not [*sic*] longer prosecute the defendant or proceed against [defendant] on the felony murder count." *Wilson*, 665 F.2d at 123. "Thus, *all that remained* after the nolle were separate guilty verdicts for the intent murder count and the attempt burglary count." (Emphasis added.) *Wilson*, 665 F.2d at 123.

The court concluded that there is no difference between a nol-pros of a single crime, and the nol-pros of a count of an indictment charging one theory of first degree murder. In either instance, a nol-pros after jeopardy attaches disallows any subsequent prosecution for that count. *Wilson*, 665 F.2d at 123 n.9. Forcing defendant to a second trial on the felony-murder count violated the double jeopardy clause because it subjected defendant to "successive exposure[s] to the rigors of trial." *Wilson*, 665 F.2d at 122. The court also stated that defendant should not be forced to surrender the jeopardy which attached to the felony-murder count in order to secure reversal of the conviction entered on the intentional murder count. *Wilson*, 665 F.2d at 124-25. Thus, defendant should not have been subjected to more than one trial on the felony-murder count.

We do not disagree with the outcome of the *Wilson* decision. Yet, as with *Saylor*, we fail to see the significance of *Wilson* to the case at bar. The fact pivotal to the *Wilson* court's holding, *i.e.*, that the State nol-prossed the felony-murder count after the jury's verdict, is absent from the case at bar. We have already acknowledged the effect of an order granting a *nolle prosequi* motion after jeopardy attaches in a proceeding. It acts as an acquittal, since the State cannot reprosecute the charge at a later trial. *Blake*, 287 Ill. App. 3d at 491. It is not, however, a true acquittal since that would require a factual resolution by the trier of fact of the defendant's liability for the

crime charged.[1] See 720 ILCS 5/2—1 (West 1996). Because a *nolle prosequi* does not actually acquit defendant of guilt for the crime charged, there was no impediment in *Wilson* to a subsequent prosecution on the remaining theory of first degree murder. Thus, while the Seventh Circuit correctly bound the State to its formal declaration that it would not pursue a theory of felony murder, the court was equally correct to affirm the defendant's retrial on intentional murder.

By contrast, no *nolle prosequi* was sought or entered in the present case nor was there an acquittal or conviction that would preclude retrial of the felony-murder theory. Accordingly, the reversal of defendant's first degree murder conviction following the first trial "wipe[d] the slate clean," so that the State could retry defendant on the single crime of first degree murder.

We find the remaining cases cited by defendant factually distinguishable. See *United States v. Cavanaugh*, 948 F.2d 405 (8th Cir. 1991) (where jury received instructions on two distinct offenses, jury returned verdict on only one of the offenses and jury was discharged without resolution of the second charge, jeopardy attached to second charge and, because lack of resolution on second charge was due to prosecutor's conduct, second offense could not be retried); *Terry v. Potter*, 111 F.3d 454 (6th Cir. 1997) (where jury instructed on "wanton" murder and "intentional" murder, returned verdict of guilty on wanton murder, but left blank the verdict form regarding intentional murder, double jeopardy barred retrial for intentional murder because jury "implicitly" acquitted defendant of intentional murder, and because jeopardy as to intentional murder ended with the first trial).

---

[1] In fact, we cannot accept the *nolle prosequi* of the felony-murder count in *Wilson* as a genuine acquittal, since immediately preceding the entry of the *nolle prosequi* order, the jury found defendant guilty of felony murder.

We believe that the result we reach today comports with the fairness principles animating the double jeopardy clauses in the state and federal constitutions. We find no basis to conclude that jeopardy terminated on the felony-murder counts at the close of the first trial. For unknown reasons,[2] the felony-murder charges simply disappeared from the case. Therefore, the record yields no reason why the felony-murder evidence and theory could not be submitted to another jury.

B. Whether the State is Estopped From Submitting Felony Murder as a Statutory Eligibility Factor at a Future Capital Sentencing Proceeding

Defendant raises a parallel argument that the State should be estopped from pursuing the felony-murder eligibility factor at a subsequent death penalty sentencing proceeding. Defendant maintains that defendant's "acquittal" of felony murder at the guilt/innocence phase of the first trial precludes retrial of any issues material to the felony-murder eligibility factor that were conclusively decided at the first trial.

Double jeopardy "incorporates the doctrine of collateral estoppel in criminal proceedings." *Schiro v. Farley*, 510 U.S. 222, 232, 127 L. Ed. 2d 47, 58, 114 S. Ct. 783, 790 (1994). Collateral estoppel,[3] or issue preclusion, "means *** that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in

---

[2]The record on appeal lacks a transcript of the proceedings from the jury instruction conference at the first trial.

[3]Defendant urges that the doctrines of collateral estoppel and direct estoppel are equally applicable in this case. Direct estoppel arises if the proceeding in which the defendant raises an estoppel claim is merely a continuation of a prior proceeding. See *United States v. Bailin*, 977 F.2d 270, 277 (7th Cir. 1992). Claims of collateral estoppel and direct estoppel may be decided by application of the same rules. *Bailin*, 977 F.2d at 280 n.15.

any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, 1194 (1970). The party seeking to invoke the collateral estoppel doctrine must show: (1) that the issue was raised and litigated in a previous proceeding; (2) that the determination of the issue was a critical and necessary part of the final judgment in the prior trial; (3) that the issue sought to be precluded in a later trial is the same one decided in the previous trial. *Bailin*, 977 F.2d at 280; *Delap v. Dugger*, 890 F.2d 285, 314 (11th Cir. 1989). Defendant bears the burden of proving that "the issue whose relitigation he seeks to foreclose was actually decided" in the initial proceeding. *Schiro*, 510 U.S. at 233, 127 L. Ed. 2d at 59, 114 S. Ct. at 791.

We need not apply all three factors of the issue preclusion test to decide this case. Record evidence cannot satisfy the second prong of the test, since there was no disposition of the felony-murder charge in the first trial. Issue preclusion assumes that the issue in question was actually *decided*, as would occur in the event of an acquittal. *Schiro*, 510 U.S. at 232, 127 L. Ed. 2d at 58, 114 S. Ct. at 790; *Ashe*, 397 U.S. at 443, 25 L. Ed. 2d at 475, 90 S. Ct. at 1194. Here, defendant cannot legitimately argue that any question of felony murder was "determined by a valid and final judgment" (*Ashe*, 510 U.S. at 443, 25 L. Ed. 2d at 475, 90 S. Ct. at 1194); at the first trial, the issue was never submitted to the jury, and neither the court nor the jury rendered any findings related to felony murder. We find, therefore, that defendant's argument lacks merit.

C. Whether the State May, in a Future Death Penalty Hearing, Assert That Defendant Is Eligible for Capital Punishment Because the Murder of Michelle Davis Occurred in the Course of Another Felony

Defendant argues next that double jeopardy bars the State from raising felony murder as a statutory eligibil-

ity factor in any future death penalty hearing. Defendant reminds the court that our death penalty statute requires a unanimous finding of eligibility by a jury before a defendant may be put to death. 720 ILCS 5/9—1(g) (West 1996). Continuing, defendant notes that, with the exception of the charge for armed robbery, the jury at defendant's second trial was deadlocked on all of the counts alleged in the indictment. From this result, defendant infers that the jury failed to return a unanimous finding of guilt on any of those charges, including felony murder and, further, that the "nonunanimous" jury verdict may be interpreted as an acquittal of defendant for felony murder as a death eligibility factor.[4]

It is true that the bar against double jeopardy may apply to capital sentencing proceedings. *Bullington v. Missouri*, 451 U.S. 430, 446, 68 L. Ed. 2d 270, 283, 101 S. Ct. 1852, 1862 (1981); *People v. Page*, 155 Ill. 2d 232, 271 (1993); *People v. Davis*, 112 Ill. 2d 78, 81 (1986). The sentencing proceeding mandated by statute is the equivalent of " 'a trial on the issue of punishment' [citation] and therefore a determination *** that the defendant was not eligible for the death penalty [operates] as an acquittal of an element essential to a sentence of death." *Davis*, 112 Ill. 2d at 82, quoting *Bullington*, 451 U.S. at 438, 68 L. Ed. 2d at 279, 101 S. Ct. at 1858; see also *Page*, 155 Ill. 2d at 271, 273. Thus, a defendant whose death sentence is reversed on grounds unrelated to the sufficiency of the evidence may be subjected to another capital sentencing hearing for the same crime. *Davis*, 112 Ill. 2d at 83-84.

---

[4]Defendant's briefs refer to an acquittal at the death penalty phase as if a capital punishment proceeding actually occurred following the guilt/innocence phase of the second trial. No death penalty hearing ever took place. However, in an effort to explain defendant's contentions before this court, we adopt defendant's terminology.

Any application of these double jeopardy principles to a capital punishment hearing presupposes, however, that a prior sentencing hearing occurred. At bar, the second trial ended in an acquittal on one count and a mistrial as to all remaining counts. No additional proceedings were held.

The State suggests that *People v. Burrows*, 148 Ill. 2d 196 (1992), is dispositive of the present appeal. In *Burrows*, defendant was tried for murder and armed robbery. The first trial ended in a mistrial, negating the need for a sentencing proceeding. At a second trial the jury found defendant guilty of murder and, following a separate hearing, the trial court sentenced defendant to death. On appeal, defendant argued that the jury's inability to reach a verdict during defendant's first trial effectively acquitted defendant of the death penalty because at least one of the members of the jury " 'voted to acquit.' " *Burrows*, 148 Ill. 2d at 258.

This court found that the trial court did not err in allowing a second capital sentencing hearing to proceed. There can be no death penalty "acquittal" in the absence of a determination by the trier of fact, following a death penalty proceeding, that the State failed to sustain its burden to prove defendant eligible for the death penalty. *Burrows*, 148 Ill. 2d at 259; see also *People v. Mack*, 182 Ill. 2d 377, 384 (1998). No death penalty acquittal occurred following the first trial, and thus, double jeopardy presented no impediment to seeking a capital sentence after the second trial. *Burrows*, 148 Ill. 2d at 259.

In the instant appeal, defendant interprets *Burrows* as limited to instances where the jury has not decided the effect of mitigating evidence in the second phase of a death penalty hearing. Defendant argues that the alleged "acquittal" in the case at bar occurred in his second trial at the first, or eligibility phase, of the death penalty hearing and, thus, *Burrows* does not control.

We need not decide whether the distinction drawn by defendant in fact has validity, since defendant misreads *Burrows*. The absence of *any* sentencing hearing, which includes the aggravation/mitigation phase, constituted the determining factor in *Burrows*:

> "[N]o sentencing hearing took place at the conclusion of his first trial because a mistrial was declared. Obviously then, neither a court nor a jury determined whether 'there [were] no mitigating factors sufficient to preclude the imposition of the death sentence.' [Citation.] Under the circumstances of this case, no sentencing hearing took place; thus, no sentencing determination was made. Consequently, it cannot be said that there was a death penalty acquittal." *Burrows*, 148 Ill. 2d at 259.

Assuming *arguendo* that the *Burrows* court intended to limit the holding of *Burrows* to cases where the trier of fact did not complete the second stage of the death penalty proceeding, *Burrows* is dispositive to this court's holding in the instant appeal. Neither the first nor the second stage of the death penalty hearing occurred following the second trial of this case. Thus, the facts that defendant deems so critical to the outcome in *Burrows* are replicated here.

The trial court correctly rejected defendant's attempt to preclude any future death penalty sentencing proceedings on double jeopardy grounds.

## CONCLUSION

For the foregoing reasons, we affirm the order of the circuit court denying defendant's motion to dismiss count VI of the State's indictment and denying defendant's motion to foreclose a future capital sentencing hearing. We remand for further proceedings consistent with this opinion. In the event of a third trial, the trial should be limited to counts I, II (intentional murder), III, IV, V (knowing murder), VI (felony murder during the course of a criminal sexual assault) and VIII (criminal sexual assault aggravated by display of a shotgun), of the original

indictment. Defendant may not be retried on count X, of which defendant was acquitted at his second trial, or on counts VII and IX, both of which depend on defendant's commission of armed robbery.

*Affirmed and remanded.*

JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that the circuit court was correct in denying Daniels' motion to dismiss count VI of the State's indictment. Contrary to the majority, however, I believe that the State should be barred from conducting a capital sentencing hearing in the event defendant is convicted of first degree murder on retrial. For the reasons set forth in my dissent in *People v. Bull*, 185 Ill. 2d 179 (1998), this state's present death penalty law does not meet the requirements of the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) or article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). Accordingly, if convicted on retrial, Daniels should be sentenced to a term of imprisonment.