No. 3--04-0827
Filed December 6, 2006.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No.  99--CF--862 |
| GLEN R. HIGGINBOTHAM, | ) ) ) | Honorable Gerald R. Kinney, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE SCHMIDT delivered the opinion of the court:

Defendant, Glen Higginbotham, was convicted of reckless homicide as a result of a traffic accident which occurred on May 4, 1999.  While incarcerated, defendant filed a document entitled "Petition for Habeas Corpus."  The circuit court of Will County dismissed defendant's petition.  Defendant appeals, claiming that the trial court erred by treating his petition as if it were filed under the Post-Conviction Hearing Act (725 ILCS 5/122--1 *et seq.* (West 2002)) and failing to acknowledge that his petition for *habeas corpus* was civil in nature and, therefore, controlled by the Illinois Code of Civil Procedure (735 ILCS 5/1--101 *et*

*seq.* (West 2002)).

BACKGROUND

While on probation following convictions of theft, possessing a stolen motor vehicle, and aggravated battery, defendant was involved in a two-car accident. This accident resulted in the death of 10-year-old Candace Graham. Sometime after 11 p.m. on May 4, 1999, Constance Graham took her daughter, Candace, to the local White Hen Pantry in Lockport, Illinois. While on their way home from the White Hen Pantry, the Graham vehicle collided with a vehicle driven by defendant.

Evidence was admitted at trial showing that both Constance Graham and defendant were driving drunk that night. Constance Graham's blood-alcohol level was .197. She had been drinking beer and tequila since 4:30 in the afternoon until the time of the accident. Blood drawn from defendant at 1:32 a.m. on May 5 (approximately 1½ hours after the accident), indicated that his blood alcohol level was .181. A forensic scientist with the Illinois State Police who specializes in toxicology further testified that her analysis of defendant's blood indicated the presence of cocaine. She could not tell how long the cocaine had been in his system but testified that, generally, in order for cocaine to be found in a person's system, it had to have been ingested within eight hours of the blood draw.

Michael Homberg of the Will County sheriff's police

2

testified that on the night of the accident, he was traveling southbound on State Street in an unincorporated area of Lockport Township at approximately 11:52 p.m. He witnessed a red vehicle traveling northbound on State Street at a high rate of speed. His radar indicated that the red vehicle was traveling at 81 miles per hour in an area where the posted speed limit was 40 miles per hour. Deputy Homberg turned around to pursue the vehicle but lost sight of it. When he saw the red vehicle next, it was at the scene of this accident, 1½ miles from where he first witnessed it speeding. Less than two minutes had elapsed from when he lost sight of it.

Constance Graham testified that while heading home from the White Hen Pantry, she was attempting to turn left onto Twelfth Street from State Street when the accident happened. She noticed a car approaching on State Street approximately 1½ blocks away and she assumed she had time to turn because the speed limit was 30 miles per hour. Before she could complete her turn, the impact occurred. Deputy Charles Albin of the Will County sheriff's police, traffic division, testified at trial after being accepted as an expert in the area of accident reconstruction. He was involved in the investigation of this crash. When arriving at the crash scene, he first observed that there was slight rain, followed by periods of heavy rain. Deputy Albin testified that there were no stop signs or stoplights at

3

the intersection where the accident happened and that cars turning onto Twelfth Street from State Street were to yield to oncoming State Street traffic.

Deputy Michael Barton of the Will County sheriff's department, traffic accident investigation division, also testified. He, too, was admitted as an expert witness in the area of accident reconstruction. Based on information he retrieved from the crash site, his opinion was that the impact speed of Graham's car was 10 miles per hour, plus or minus 3 miles per hour. Furthermore, he testified that the impact speed of defendant's car was 68 miles per hour, plus or minus 3 miles per hour. He noted that giving the defendant the benefit of the doubt when calculating the speed of defendant's car before the collision, defendant's vehicle was traveling at about 78 miles per hour before defendant applied his brakes. The calculations were based upon information given to Barton indicating that the road was dry at the time of the collision and that it did not start raining until after the collision.

Over defense objection, the court agreed with a prosecution request to give the jury a pattern instruction on proximate cause. During its deliberations, the jury sent two notes to the trial judge. The first question asked to be allowed to view a portion of a videotape taken at the scene of the accident. With agreement of the parties, the trial judge granted this request.

4

Two hours later, the jury asked whether the phrase "caused the death" meant "sole responsibility or partial." Over defense objection, the trial judge allowed the prosecution's request to read the jury a modified version of Illinois Pattern Jury Instructions, Criminal, No. 7.15 (3d ed. 1992), stating that the prosecution had to prove that the defendant's acts were "a contributing cause" of the death, but that it was not necessary to find his acts "were the sole and immediate cause of death." The jury later found the defendant guilty of reckless homicide.

Prior to the reckless homicide trial, the State filed petitions to revoke defendant's probation for his prior convictions. The State's petitions to revoke were granted and defendant was sentenced to concurrent sentences of seven, five, and seven years, respectively, for convictions from one count of theft and two counts of possessing a stolen motor vehicle. Defendant also received a seven-year sentence for his aggravated battery conviction, which the trial court ordered to be served consecutively to the three concurrent sentences.

Thereafter, defendant was sentenced for this reckless homicide conviction. The trial court ordered the defendant to serve a seven-year term of imprisonment to run consecutively to the prior sentences due to the "serious nature of the offense" and because the defendant was on probation at the time of the offense.

On direct appeal, this court in *People v. Higginbotham*, Nos. 3--00--0372, 3--00--0373, 3--00--0374, 3--00--0375, 3--00--0376, (May 29, 2002), reversed the trial court's imposition of the consecutive sentence for defendant's aggravated battery conviction, but upheld the trial court's order imposing a consecutive seven-year sentence for defendant's reckless homicide conviction.

While serving the aforementioned sentences, defendant filed a *pro se* pleading with the trial court.  He titled this pleading "Petition for Habeas Corpus."  The trial court recharacterized defendant's pleading as a postconviction petition, found it frivolous and patently without merit, and then dismissed it. Defendant appeals.

ANALYSIS

Where there is no dispute as to the facts of a case and the issued raised on appeal is purely one of law, such as the case before us, our review is *de novo*.  *People v. Daniels*, 187 Ill. 2d 301, 718 N.E.2d 149 (1999); *People v. Coleman*, 307 Ill. App. 3d 930, 718 N.E.2d 1074 (1999).

Defendant acknowledges that Illinois law is well established that a trial court has the authority to reclassify a pleading titled petition for *habeas corpus* relief as a petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122--1 *et seq*. (West 2002)).  See *People ex rel. Haven v. Macieiski*, 38 Ill. 2d

6

396, 231 N.E.2d 433 (1967); *People ex rel. Lewis v. Frye*, 42 Ill. 2d 58, 245 N.E.2d 483 (1969). Defendant argues, however, that when exercising this authority and recharacterizing such a document, a trial judge must "(1) notify the *pro se* litigant that the court intends to recharacterize the pleading, (2) warn the litigant that this recharacterization means that any subsequent postconviction petition will be subject to the restrictions on successive postconviction petitions, and (3) provide the litigant an opportunity to withdraw the pleading or amend it so that it contains all the claims appropriate to a postconviction petition that the litigant believes he or she has." *People v. Shellstrom*, 216 Ill. 2d 45, 57, 833 N.E.2d 863, 870 (2005). Defendant maintains that the trial court erred in dismissing his petition for he was never notified of the court's intention to recharacterize it, warned of the consequences pertaining to subsequent postconviction petitions, or provided an opportunity to withdraw or amend the pleading. Defendant claims that such error mandates reversal pursuant to *Shellstrom*.

The State argues that the defendant misreads *Shellstrom*. The State notes that *Shellstrom* begins by reaffirming well-settled law holding that when a *pro se* pleading alleges a deprivation of rights cognizable in a postconviction petition, the trial judge may treat the pleading as a postconviction petition. *Shellstrom*, 216 Ill. 2d at 53. The State continues

7

that *Shellstrom* does not hold, as defendant argues, that a trial court commits reversible error when it recharacterizes a *pro se* pleading as a postconviction petition then dismisses it as patently without merit without first notifying the *pro se* litigant of the recharacterization. The State argues that *Shellstrom* merely holds that if the trial court fails to give the *Shellstrom* notifications to the *pro se* litigant prior to recharacterization, then the recharacterized pleading cannot be considered to have become a postconviction petition for purposes of applying restrictions on successive postconviction petitions to later pleadings. We agree with the State.

The *Shellstrom* court, after announcing that "in the future trial courts must provide the aforementioned notifications, stated that "[i]f the [trial] court fails to do so, the pleading cannot be considered to have become a postconviction petition for purposes of applying to later pleadings the Act's restrictions on successive postconviction petitions." *Shellstrom*, 216 Ill. 2d at 57. The *Shellstrom* court did not say that failing to provide a *pro se* litigant with notice of the court's intent to recharacterize a pleading as a postconviction petition mandated reversal. Again, as both sides acknowledge, the *Shellstrom* court "reaffirm[ed] that, where a *pro se* pleading alleges a deprivation of rights cognizable in a postconviction proceeding, a trial court may treat the pleading as a postconviction petition, even

8

where the pleading is labeled differently." *Shellstrom*, 216 Ill. 2d at 52-53.

Defendant makes no argument that his pleading stated the gist of a constitutional claim, only that it was error to reclassify it and dismiss it without giving him the *Shellstrom* notice and warning. We hold that the trial court did have the authority to recharacterize defendant's pleading and that it was not reversible error to dismiss it. We find that since the trial court did not notify as required by *Shellstrom,* the pleadings cannot be considered to have become a postconviction petition for purposes of applying the restrictions on successive postconviction petitions contained in the Post-Conviction Hearing Act to any later pleadings. 725 ILCS 5/122--1 *et seq*. (West 2002).

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

CARTER and O'BRIEN, JJ., concur.

9